People of the State of Illinois, Appellee, v.
Samuel Gallegos (Impleaded), Appellant.

Gen. No. 50,705.

First District, Third Division.

February 9, 1967.

Gerald W. Getty, Public Defender of Cook County, of
Chicago (Frederick F. Cohn and James J. Doherty, As-
sistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of
Chicago (Elmer C. Kissane and Morton E. Friedman, As-
sistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the
court.

Samuel Gallegos and Arthur Lewis waived a jury and
were tried by the court for the robbery of Daniel Scan-
lan. They were found guilty and Gallegos, who prosecutes
this appeal, was sentenced to the penitentiary for a term
of one to four years. He contends that he was intoxi-
cated at the time of the robbery and that the State
failed to prove beyond all reasonable doubt that he acted
with conscious awareness of his acts.

Scanlan, a member of the Chicago Police Force, was assigned to undercover duty on December 30, 1964. He worked with seven other officers in the same special task force and their job was to catch criminals who prey upon drunken men, lone women or other persons obviously weak or disabled. At 9:15 p. m. on that date Scanlan, pretending to be intoxicated, acted as a decoy for his undercover unit. As he stood in front of a store on Madison Street just west of Halsted Street, Chicago, he was approached, according to his testimony, by Gallegos who asked him what he was doing there and where he lived. Lewis then stepped up and told Gallegos that Scanlan was drunk. The two men walked to the curb and engaged in a brief conversation which Scanlan could not hear. After talking together they reapproached him, Lewis grabbed him from behind, pinned his arms down and pulled him into the store front. Gallegos stood in front of him, went through his pockets and took $20 (a ten-dollar bill, a five-dollar bill and five singles) which had been initialed previously.

Scanlan was equipped with a two-way radio and a transmitting device was attached to the lapel of his outer coat. As his money was taken he communicated with his brother officers who were deployed nearby. When the robbers heard him call for help they started to run away. Scanlan seized Gallegos, and one of the other officers, who had observed what was going on from across the street, captured Lewis as he fled from the scene. The marked money was found on Gallegos.

Lewis who lived on Halsted Street, north of Madison, testified that he saw Scanlan bending over in a doorway and thought that he was hurt; that Gallegos came up and talked to Scanlan; Scanlan took money from his pocket, offered it to Gallegos and told him to buy Lewis a drink; Lewis told them they were both drunk and should "get off the street"; he turned to walk away

106

and as he did so he was knocked to the ground. He denied talking privately to Gallegos or participating in the robbery.

Gallegos testified that he started to drink at noontime on the 30th and had consumed three bottles of wine, ten shots of whiskey and seven or eight beers by the time he was arrested. He said he was on the way to visit a friend when he was beat up and arrested. He denied talking to Lewis or Scanlan, or going through Scanlan's pocket. He said he was drunk at the time he was arrested. On cross-examination he said that his drunkenness was voluntary and that he did not rob Scanlan.

Although his defense at his trial was both a denial that he committed the alleged robbery and an assertion that he was intoxicated, his sole defense on appeal is that his intoxication, even though voluntary, is a complete defense to the crime of robbery because it precluded his having the mental state requisite to the commission of this offense. This defense is founded on the provisions of the Criminal Code of 1961 (Ill Rev Stats 1963, c 38) which, it is argued, changed the prior law of this State which prevented the defense of voluntary intoxication to a crime not requiring a specific intent. The statutory provisions relied upon are section 6–3(a) pertaining to intoxication; section 4–3(a) and (b) prescribing the requirement of a mental state for criminal offenses, and sections 4–4 to 4–6 defining the applicable mental states.

The argument proceeds that intoxication is an affirmative defense and since the defendant raised this defense it became the State's burden to prove the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense of robbery. The argument concludes with the assertion that the State did not meet this burden but, in effect, stipulated to the defendant's intoxicated condition because

the sole purpose of the State's cross-examination was to show that his intoxication was voluntary and thus it did not dispute his drunken condition.

The State replies that the Criminal Code of 1961 does not permit the defense of voluntary intoxication to a crime not requiring specific intent, and since robbery does not require such an intent only involuntary intoxication could be a defense to this crime.

It is unnecessary for us to settle the interesting argument waged between the defendant and the State because it is really academic. The court, as the trier of the facts, found that the defendant was not intoxicated. The court found that the defendant's claims of drunkenness were self-serving declarations, that he knew what he was doing, that his conscious objective was to rob Scanlan and that he intentionally accomplished that purpose. The court specifically found that the defendant was sober enough to go through Scanlan's pockets—while Scanlan's arms were pinned back of him by Lewis; that he was sober enough to pick out of Scanlan's pockets all the money Scanlan had on him, and that he was sober enough to run away when Scanlan called for help. In the face of these factual findings, the argument as to the degree of the defendant's drunkenness and its effect on his mental state is superfluous.

The trial court was the judge of the credibility of the witnesses and, if Officer Scanlan's testimony was believed (as it obviously was) the evidence established beyond all reasonable doubt that the defendant conspired with Lewis and that he and Lewis robbed Scanlan.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.