**People of the State of Illinois, Plaintiff-Appellee, v. James Myers, Defendant-Appellant.**

Gen. No. 67–30.

Third District.

May 3, 1968.

Robert E. White, of Ottawa, for appellant.

Robert E. Richardson, State's Attorney of LaSalle County, of Ottawa, for appellee.

CULBERTSON, J.

Defendant, James Myers, was tried by a jury in the magistrate division of the Circuit Court of LaSalle County and was found guilty of knowingly resisting or obstructing a peace officer, (Ill Rev Stats 1965, c 38, par 31-1), and of reckless conduct. (Ill Rev Stats 1965, c 38, par 12-5.) For each offense he was sentenced to serve a period of one year on a penal farm, the sentences to run concurrently. He has appealed, contending that he was not proved guilty of either charge beyond a reasonable doubt, and that other errors require reversal.

From the record it appears that defendant returned to his rural home at about 8:00 p. m. on July 16, 1966, after having spent much of the day drinking in various taverns in and around the City of Ottawa. He became embroiled in an argument with his wife and, by his own admission, discharged a shotgun in an effort to drive her away from the home. When this occurred, the wife and the couple's four children fled to the home of a neighbor, and a report was made to the sheriff's office that defendant was shooting at his wife and children with a shotgun. Shortly thereafter, a sheriff's car manned by deputies William Dummett and Wayne Hess came to the Myers' residence. Defendant would not open the door, or come out, but talked to Dummett through a screened window. He told the officer to talk to the wife about the domestic difficulties, and when Dummett replied that they would have to come back and get him if the wife signed a complaint, defendant profanely told them to go ahead and get a warrant. According to the officers, defendant was very belligerent and gave the impression that he had been drinking.

Immediately following the conversation with defendant, the officers drove to the neighbor's house, some 40 to 60 rods away, where defendant's wife signed a complaint against him for disorderly conduct and cautioned the officers to be careful. Upon their return to the Myers' home they got no response when they knocked on the doors and called through the open window. Thereafter, they employed a mechanical device, commonly referred to as a bullhorn, and periodically called out to defendant that they had a warrant and had to take him in. Other sheriff's officers and state troopers came to the scene and an effort was then made to force defendant out of the house with tear gas. When one of the canisters of gas fell into a waste basket and started a fire, deputy Linton Bowers donned a gas mask, entered the house and extinguished the blaze. While there he

344

searched the downstairs rooms but found no trace of defendant. Following this, Hess put on an air pack and he and Bowers, with guns drawn, searched the upstairs rooms where they discovered defendant in a closed bedroom, lying on the floor behind a bureau. Defendant testified that he was lying on the floor to escape the effects of the tear gas and, while defendant denied it, the officers testified a rug had been placed across the base of the door to the bedroom.

According to the officers, defendant, upon being discovered, pushed the bureau over and rushed at them, whereupon they seized his arms, advised him they had a warrant for his arrest and, after some tussling and argument, pushed him toward the stairs. By the defendant's version, the bureau was knocked over accidentally and he put up no resistance when he was handed a warrant.

As the trio went down the stairs, described as being narrow, defendant was in the lead, Hess was next and was holding his gun at defendant's back, and Bowers was behind Hess. Under circumstances later to be detailed, and which form the basis for the charge of reckless conduct against defendant, Hess fell backward on the stairs causing his gun to discharge a bullet that struck Bowers in the leg. When this occurred defendant ran outside the house and was seized by other officers who testified that defendant kicked and fought, and that it took three men to subdue him and to place him in handcuffs. Defendant denied that he had resisted arrest, but testified he was forced to defend himself against overzealous manhandling by officers who were angered because one of their number had been shot.

██ ██ Defendant's contention that the State failed to prove him guilty beyond a reasonable doubt of knowingly resisting a peace officer is based on two arguments. First, that the evidence shows he was too intoxicated to be capable of having the knowledge requisite to the

crime; and, second, that he did not resist but was, in fact, exercising his right of self-defense against unlawfully excessive force exerted by the arresting officers. Both issues, however, were for the jury to determine and we see no basis for disturbing its judgment in either respect. (People v. McGuire, 18 Ill2d 257, 163 NE2d 832; People v. Walsh, 28 Ill2d 405, 192 NE2d 843; cf. People v. Evrard, 55 Ill App2d 270, 204 NE2d 777.) Even if it be assumed defendant was intoxicated, there was ample evidence from which the jury could conclude that his intoxication was not so extreme as to render him incapable of knowing what he was doing. He was in sufficient possession of his faculties to recognize Drummett as a police officer when the latter first arrived, to know that he could not be arrested without a warrant, and to avoid the effects of the tear gas by lying on the floor and sealing the door with a rug. Furthermore, the record discloses he was able to remember each tavern he had been in, and that he was able to recount in detail his actions and conversations before, during and after his arrest. (Cf. People v. Strader, 23 Ill2d 13, 177 NE2d 126; People v. Gallegos, 80 Ill App2d 105, 224 NE2d 631.)

On the matter of whether defendant was resisting or merely defending himself when he was finally taken into custody, the evidence was in conflict. The jury was the judge of the credibility of the opposing witnesses and of the weight to be accorded their testimony. And if the jurors believed the officers, as they obviously did, the evidence was sufficient to establish defendant's guilt of resisting beyond a reasonable doubt.

Returning to the events on the stairs, and to defendant's claim that he was not proved guilty of reckless conduct beyond a reasonable doubt, Hess testified as follows: That defendant was giving him a "hard time" as they were coming down the stairs; that he prodded

defendant with his gun when the latter slowed down; that defendant turned suddenly and struck the witness in the chest, causing him to lose his balance and fall backwards; that he, Hess, then tried to strike defendant with the gun; that their bodies then came together; and the gun discharged. Defendant, for his part, denied that he had touched or attempted to attack Hess and testified that he had merely turned to ask a question. He argues here that the mere act of turning could at best be only a negligent act, for which there could be no criminal liability, and theorizes that Hess lost his balance because of the bulky air pack equipment he was wearing. In addition, it is argued as being improbable and beyond belief that defendant would have attempted an attack on Hess with a gun in his back. Bowers testified that he saw defendant turn and lunge at Hess, but conceded that his position on the stairs did not permit him to see if there was actual physical contact between the men.

Section 12–5 of the Criminal Code defines the crime of reckless conduct in these words: "A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful." (Ill Rev Stats 1965, c 38, par 12–5.) Again in section 4–6 of the Code, the term "recklessness" is defined in this manner: "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. . . ." (Ill Rev Stats 1965, c 38, par 4–6.) Defendant contends that he was not proved guilty of reckless conduct as it is defined in

the Code, and further that the evidence fails to show that his purported conduct was the effective and efficient cause of Bowers' injury.

 We find little merit to these contentions which, in the first instance, are predicated on the premise that defendant did no more than to turn on the stairs to ask a question. Taking into consideration the testimony of Hess, the statement of Bowers that defendant lunged at Hess and the entire pattern of defendant's conduct throughout the incident, there is credible evidence from which the jury could find, as it did, that defendant did assault Hess on the stairs. And having made that finding, it was also the function of the jury, under proper instructions from the court, to determine if defendant's conduct was reckless within the meaning of the Code, and whether there was causal relation to the injury that did occur. We see no basis in the record which would permit us to disturb the jury's conclusions in these matters. In our opinion, reasonable men would agree under the circumstances that defendant was aware that an attack on Hess created a substantial risk of bodily harm to the officers, and that his disregard of such risk constituted a gross deviation from the standard of care fixed by section 12–5. Similarly, a jury of reasonable men could conclude from the evidence that defendant's act was a direct cause of the injury that followed.

 As the first of purported trial errors advanced as grounds for reversal, it is argued that the trial court improperly admitted evidence of a crime other than the one for which defendant was being tried when it permitted testimony concerning the fact that defendant's wife had signed a complaint charging him with disorderly conduct. While we are familiar with the rule upon which defendant relies, (see: People v. Tranowski, 20 Ill2d 11, 169 NE2d 347; People v. Brown, 64 Ill App2d 203, 212 NE2d 275), it has no application here. Section

348

31–1 of the Criminal Code, under which defendant was charged with resisting a peace officer, requires as one of its elements that the peace officer be engaged in "any authorized act within his official authority." This being so, testimony that the officers were acting under a valid complaint and warrant was relevant to the issues of one of the crimes for which defendant was being tried. Within this point of argument defendant also complains of the testimony of a witness who testified to a conversation in which the wife of defendant related that her husband was after her with a gun. Although we believe it was improper to admit such testimony, no prejudice to the defendant resulted. Other competent evidence in the record established that the police were called because defendant was shooting at his wife and children, and defendant himself testified he had fired a shotgun in an effort to frighten his wife away from their home.

 The day following defendant's arrest a shotgun and a box of shotgun shells were found, respectively, in an upstairs closet and the kitchen at his home and taken into custody by the sheriff. At the trial they were introduced into evidence by the prosecution over defendant's objection that the chain of possession from the time of seizure until trial had not been established, and that contention is renewed here. We agree with the trial court that it is without merit. The record conclusively discloses that the articles were identified as those taken from the defendant's home, and that they were in the sheriff's possession continuously up to the time of trial. In this court defendant also objects that the exhibits had no relevancy to the crimes for which he was being tried. It is axiomatic, however, that objections to the admission of evidence not made in the trial court will not be considered on appeal. (People v. French, 33 Ill2d 146, 149, 210 NE2d 540; People v. Witherspoon, 27 Ill2d 483, 190 NE2d 281; People v. Collins, 25 Ill2d 302, 185 NE2d 147.)

 When two character witnesses for defendant were cross-examined, the prosecutor, over objection by defendant, was permitted to inquire specifically into defendant's use of intoxicating liquors, and to ask whether he was the kind of man who would chase his wife out of the house with a shotgun. It has long been held that the reputation of a person cannot be impeached by particular acts of bad conduct (People v. Page, 365 Ill 524, 528, 6 NE2d 845; People v. Anderson, 337 Ill 310, 331, 169 NE 243; People v. Hermens, 5 Ill2d 277, 286, 125 NE2d 500), and we are inclined to agree that the cross-examination here exceeded proper limits. At the same time, however, it cannot be said that defendant was prejudiced to such a degree as to deny him a fair trial. Prior to the jury's exposure to such line of questions, the defendant, his wife and a bartender called as a witness for the defense had already given extensive testimony on the subject of defendant's use of liquor and his history for intoxication. Similarly, the jury was already aware from defendant's own testimony that he had fired a shotgun to frighten his wife away from their home. Under the circumstances, the cross-examination of the character witnesses about the same specific acts of conduct could have had no new or compelling influence on the jury.

 Defendant made a motion for probation and it is now contended that its denial by the trial court was an arbitrary and unauthorized exercise of discretion which is subject to review. (See: People v. Molz, 415 Ill 183, 189, 113 NE2d 314; People v. Donovan, 376 Ill 602, 606, 35 NE2d 54.) Specifically, it is defendant's claim that certain remarks of the trial court are to be interpreted as showing that probation was denied as a means of punishing defendant for exercising his right to trial by jury instead of pleading guilty. (Cf. United States v. Wiley, 7th Cir, 278 F2d 506.) Although we feel the court did indeed make some ill-advised remarks in assessing de-

fendant's pre-trial and post-trial remorse and in commenting that defendant had gambled on a trial and had lost, we do not believe he arbitrarily denied probation because defendant had failed to plead guilty. Particularly is this true since the court stated in his remarks: "That is not to say that a person should never be granted probation if he refuses to plead guilty, because under the Constitution everyone is entitled to the cloak of innocence until proven guilty." Furthermore, an examination of the court's comments in their entirety indicates that the denial of probation was predicated on the evidence presented at the hearing on aggravation and mitigation, and upon the nature of defendant's misconduct disclosed by evidence at the trial.

■■ ■■ For his final contention defendant asserts that the sentences imposed by the trial court were unduly severe and excessive, and asks that we reduce them as authorized by Rule 615 (b) (4) of the Illinois Supreme Court Rules. (Ill Rev Stats 1967, c 110A, par 615 (b) (4).) Undoubtedly courts of review in this jurisdiction have the power to reduce sentence where justice requires it, or where it clearly appears that a penalty is not proportioned to the nature of the offense. (People v. Miller, 33 Ill2d 439, 211 NE2d 708; People v. Watts, 81 Ill App2d 283, 225 NE2d 147; People v. Carroll, 76 Ill App2d 9, 221 NE2d 528.) Seeking to create an injustice which would cause us to act, defendant argues that his sentences were increased because the trial court was displeased with defendant for having exercised his constitutional right to plead not guilty and demand a trial by jury. We find nothing in the record to support such a claim, nor has anything been brought to our attention by defendant. The sentences were within the limits prescribed by law and, upon a consideration of the entire record, we cannot say that they were disproportionate to the offenses committed or that the trial court abused its discretion in such matter.

The judgment of the Circuit Court of LaSalle County is affirmed.

Judgment affirmed.

ALLOY, P. J. and STOUDER, J., concur.