THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES M. BEHNING, Defendant-Appellant.

(No. 70-30; ▆▆▆▆▆▆▆

Second District—November 4, 1970.

Morton Zwick, Director of Defender Project, of Chicago, (Thomas Holum, of Defender Project, of Elgin, of counsel,) for appellant.

William Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, Assistant State's Attorney, of Elgin, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendant, James H. Behning, was convicted of the offense of forgery in violation of Section 17—3 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1961, ch. 38, par. 17—3) and sentenced to a term

of two to six years in the state penitentiary. On appeal the defendant contends that he should have been discharged pursuant to Section 103-5 of Chapter 38 since he was not brought to trial within 120 days from the date he was taken into custody and that he was not proved guilty of the charge beyond a reasonable doubt since the evidence showed he was an uncontrollable alcoholic and was so intoxicated on the day of the offense that he could not have formed the specific intent necessary to commit the crime.

Behning was first arrested in Elgin on April 29, 1969, because of a disturbance he caused on Villa Street in that city. He was taken to the station by the Elgin police where it was learned that he was also wanted on a warrant issued in Dundee for forgery. However, Behning was surrendered to authorities from Cook County where he was apparently convicted on other charges. On July 7, 1969, Behning was indicted by the grand jury of Kane County for a forgery committed in Elgin on February 19, 1969. His trial on this charge commenced August 28, 1969, 121 days after April 29, the date of his first arrest. It is agreed that he was in continual custody after that date.

Section 103-5 of Chapter 38 (Ill. Rev. Stat. 1967, ch. 38, par. 103—5) entitled SPEEDY TRIAL, is the statutory implementation of the right to a speedy public trial guaranteed by Sec. 9 of Article II of the Constitution of Illinois 1870, and states in sub-paragraph (a) as follows:

"Every Person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defend- ant, by an examination for competency ordered pursuant to Section 104-2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114-4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

■■ The 120-day period within which the accused must be tried begins to run on the date he is taken into custody "in connection with the subsequently prosecuted charges." (*People v. Jones*, 33 Ill.2d 357, 360; *People v. Nettles*, 107 Ill.App.2d 143, 150.) In his brief, the defendant states that he was taken into custody on April 29 to be questioned in regard to the "instant" charge and that the 120-day period began to run on that date. The record, however, does not support that statement.

■■■ At a pre-trial hearing, Detective Siete of the Elgin Police Department testified that Behning was first taken into custody on April 29 because of the disturbance on Villa Street and that it was then learned that there was "a warrant out for him for forgery from Dundee." The forgery for which Behning was convicted occurred in Elgin. There is

nothing in the record to indicate that Behning was ever formally charged with any forgeries prior to July 7 when eight separate indictments were returned against him for forgery. Although the absence of a formal charge is not determinative there is nothing to show that Behning was ever in custody prior to July 7 in connection with the charge for which he was ultimately convicted. It is incumbent on the accused to show that he is eligible for discharge under the Act and the "* * * record must establish each such jurisdictional fact." *People v. Walton,* 110 Ill.App.2d 115, 117; *People v. Nettles, supra.*

Even if the record did establish that Behning was taken into custody on April 29 in connection with this particular charge, we do not feel that he would be eligible for discharge. Behning was indicted on July 7 and arraigned on July 11. At the time of his arraignment, Behning presented to the Court nine pre-trial motions and a petition for a writ of *habeas corpus.* The court appointed the public defender to represent Behning and handed the papers to the deputy public defender who was present in open court. Although the matter was continued to August 18, presumably for a hearing on the motions, the record shows that a hearing was held on August 11 to consider the petition for a writ. At the conclusion of that hearing the petition was denied.

On August 18, the defendant presented a motion to dismiss his attorney and requested that the court appoint a "bar association attorney". This was done and the matter continued to August 25 for trial or for any motions that the new defense attorney might care to present. On August 25, Behning's counsel appeared and requested a list of witnesses and filed a motion to suppress Behning's confession. The matter was continued until August 27 for a hearing on the motion over the objection of defense counsel who argued that he was prepared to proceed on his motion and with the trial. On August 27, the defendant moved to dismiss the pending charges on the grounds that more than 120 days had elapsed since his arrest. The court denied that motion and proceeded to conduct a lengthy hearing on the motion to suppress. At the conclusion of the hearing, the motion was denied and the cause continued to the next morning, August 28, for trial. On August 28, a jury was chosen and trial commenced.

■■ If Behning had been arrested on this particular charge on April 29, the trial would have commenced on the 121st day since in the computation of the period the first day is excluded and the last day included. In addition to the mere passage of time, however, the defendant must show that the delay in the trial was not caused by his actions in order to be entitled to discharge. (*People v. Shaw,* 24 Ill.2d 219, 221; *People v. Morris,* 3 Ill.2d 437, 442.) In the case of *People v. Walker,* 100 Ill.App.2d

282, 286, the First District considered a situation where the defendant was arrested on August 12, 1965; indicted on September 15; arraigned on September 22 and tried after the expiration of 120 days of continuous incarceration. The case had been assigned for trial but before a trial date was set the defendant moved for, and was granted, a substitution of judges. The court concluded that, under the circumstances of that case, the delay was caused by the defendant's motion for substitution and in its discussion of Section 103-5(a), quoted above, stated:

"We think it implicit in the phraseology of this statute that, as a matter of reciprocal obligation, an accused seeking its guarantee must himself be held to some measure of restraint in exercising certain of the pretrial tactical motions available to him. We speak in more specific terms of defendant's motion for a substitution of judges, albeit made at the earliest opportunity, and its adverse effect upon the orderly administrative process necessarily a part of bringing his cause to trial."

■■ We feel that the defendant's motion made on August 18 to dismiss the public defender and have the court appoint new counsel inevitably contributed to the delay in the trial of his case. Although the matter was continued to August 25 for trial, a date within the 120-day limits, it was with the sensible provision of the court that the new counsel could then present any pretrial motions that he might feel were necessary. In fact, essential motions were filed and extensively considered. Each case, of course, must be examined on its own facts but our examination of this record can leave us with no conclusion but that the delay was caused, at least partially, by the actions of the defendant.

■■ The defendant further contends that the uncontradicted evidence showed that he was so intoxicated on the date the alleged forgery took place that he could not have formed the necessary specific intent to commit the crime of forgery, *i.e.,* the intent to defraud. Voluntary intoxication is not a defense to a crime unless such intoxication "negatives the existence of a mental state which is an element of the offense" (Ill. Rev. Stat. 1967, ch. 38, par. 6—3; *People v. Walcher,* 42 Ill.2d 159, 163.) Ordinarily, the existence of such a degree of intoxication is a question of fact to be determined on the basis of all the evidence introduced before the jury. *People v. Jones,* 99 Ill.App.2d 364, 370; *People v. Myers,* 94 Ill.App.2d 340, 346.

On February 19, 1969, Behning and his common law wife, Marlene Peace, went to Roth Pharmacy in Elgin. Miss Peace had previously filled in a blank check on a business account payable to the order of James Behning in the amount of $55.00 and signed it as Chris Blueberg. Behning endorsed the check and the couple presented it to Clinton

Munch, a pharmacist, and requested that he cash it. At Munch's request, Behning added his address to his endorsement. Munch testified that most of his conversation at the time the check was cashed was with Miss Peace and that Behning was "like a second party". Munch stated that Behning appeared "normal" and, although he seemed "detached" and gazed around the store, his words were understandable and he did nothing to lead him to believe he was intoxicated.

Marlene Peace, who was granted immunity, testified that Behning was drunk on February 19 and had consumed two fifths of vodka, his normal daily portion. Although he was able to sign his name and walk around the drug store, Miss Peace said that anyone could see he was intoxicated. She also testified that Behning was drunk each day for about nine months before February 19.

Behning himself testified that he was a chronic alcoholic and did not remember where he was or what he did on February 19 because he had been intoxicated. He knew he was with Marlene Peace and that he drank two quarts of vodka on that day because he was with her and drank that amount every day.

■■■ Although there was convincing evidence that Behning was, in fact, an alcoholic, the specific issue was the degree of his intoxication on February 19 and whether he had the requisite mental state to commit a forgery. The fact that he was an alcoholic did not exempt him from responsibility for his criminal acts unless the evidence showed that he was so intoxicated as to "negative the existence" of the mental state necessary to commit the crime. The issue was one for the jury to resolve and since it appears that they were properly instructed we see no reason to disturb their judgment in that respect.

For the reasons stated, the judgment of the trial court will be affirmed.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.