THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LONNIE GALE EASON, Defendant-Appellant.

Second District (1st Division)   No. 75-267

Opinion filed December 16, 1976.

Ralph Ruebner, Peter B. Nolte, and Mark Schuster, all of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko and Christine M. Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

A Winnebago County jury found Lonnie Gale Eason guilty of a single count of armed robbery, and the court sentenced him to serve not less than five, nor more than 20 years in the penitentiary. He appeals from that conviction contending (1) that he was denied his right to a speedy trial, (2) that in light of his alibi testimony, the State's identification evidence was insufficient to prove his guilt beyond a reasonable doubt, and (3) that the trial court erred in failing to suppress certain statements made by the defendant during a post-arrest custodial interrogation. We find none of these arguments persuasive, and affirm the judgment entered by the lower court.

Between 12:30 and 12:40 p.m. on September 19, 1974, three men entered the offices of the Rockford Mercantile Exchange and ordered the six female employees into a back room where their hands were tied and they were forced to lie down on the floor. At least one of the men was carrying a handgun, and after emptying the cash drawer, the safe, and the employees' purses, the three men left, instructing the women not to move or call the police for at least 20 minutes. At approximately 12:45 p.m. on the same afternoon, Jack Lunnon, whose offices were in the same building, boarded an elevator with three men who had just come from the

offices of the Rockford Mercantile Exchange. He rode to the first floor with these men and watched as they disappeared into a nearby alley.

On October 11, 1974, the defendant was arrested and taken to the police station where he voluntarily participated in a lineup and was identified as one of the robbers by Mr. Lunnon and two of the employees. He was charged with armed robbery and brought to trial before a jury on March 24, 1975. At trial, three witnesses positively identified the defendant as one of the robbers. The defendant, however, denied any involvement in the crime and testified that at the time of the robbery he was at his mother's beauty salon having his hair shampooed and set. This alibi was corroborated by his mother and sister who both testified on his behalf, as well as by a Mrs. Vaughn. Despite this alibi testimony, the jury found the defendant guilty as charged.

The defendant first contends on appeal that he was denied the speedy trial guaranteed under Illinois law by the Fourth Term Act (Ill. Rev. Stat. 1973, ch. 38, par. 103—5). Under that Act, unless he occasions a delay, a defendant in custody must either be tried within 120 days of his arrest, or be released without further prosecution. It is undisputed that the defendant's trial on March 24, 1975, was more than 120 days after his arrest on October 11, 1974. On February 14, 1975, the 126th day, the defendant moved for dismissal under the Fourth Term Act, and his motion was denied.

The only issue in dispute is whether or not a continuance granted on January 15, 1975, is one chargeable to the defendant and therefore one which tolls the running of the 120-day period. On January 15, 1975, the 96th day after the defendant's arrest, the defendant's appointed counsel petitioned the court for leave to withdraw. At that time he informed the judge that "I have discussed with Mr. Eason the problems I have in being able to fairly represent the interest of both of my clients. It is an impossible situation, and there is no way I feel I can continue to represent Mr. Eason." The judge then asked the defendant if he had any objection to defense counsel withdrawing from the case and the defendant responded: "Will whoever you·appoint be given the time to be familiar with my case? The 27th [date set for trial] is only a couple weeks away." The judge assured the defendant that his new counsel would be given adequate time to prepare and the motion was continued one week so that a new attorney could be appointed at the time of the first attorney's withdrawal.

At defendant's hearing on his motion for dismissal, the trial judge cited this January 15 motion to withdraw as one chargeable to the defendant and, accordingly, he denied the motion.

■■ Under Illinois law it is clear that a delay occasioned by the withdrawal of counsel, to which the defendant agrees or acquiesces, may

be chargeable to the defendant and toll the running of the 120-day period. *People v. Ford* (1975), 34 Ill. App. 3d 79, 82-83, 339 N.E.2d 293, 296-97; *People v. Thomas* (1975), 25 Ill. App. 3d 88, 90, 322 N.E.2d 597, 599; *People v. Behning* (1970), 130 Ill. App. 2d 536, 540, 263 N.E.2d 607, 610; *People v. Jenkins* (1968), 101 Ill. App. 2d 414, 418, 243 N.E.2d 259, 262.

A similar situation arose in *People v. Johnson* (1970), 45 Ill. 2d 38, 41-42, 257 N.E.2d 3, 6, where our Supreme Court stated:

> "* * * after defendant's private counsel withdrew he had no attorney and he was not ready for trial. He mentioned a preference for a bar association attorney, but he did not object nor remonstrate in any way when the court appointed the Public Defender who was already familiar with the pending indictments. It is not error for a court on its own motion to appoint an attorney for one accused with a crime unless it is done over his objection and some exception is taken to the court's action at the time. (*People v. Ephraim*, 411 Ill. 118.) Nor did defendant object to the continuance which was granted on his behalf and which he would have needed whether a bar association attorney or the Public Defender had been appointed. It was not until August 14, after the running of the four-month period, that defendant for the first time made any disclaimer as to the continuance granted for his benefit on July 22. We hold that defendant both accepted the appointment of the Public Defender at the time it was made and also consented to and acquiesced in the request of his said attorney for a continuance."

In the instant case the delay caused by the withdrawal of counsel and the subsequent appointment of new counsel, with the knowledge and acquiescence of the defendant, constitutes a delay chargeable to the defendant, and the trial court properly tolled the running of the 120-day period at the time the motion for withdrawal was made.

The defendant next contends that in light of his alibi testimony the evidence was insufficient to prove his guilt beyond a reasonable doubt. The defendant was positively identified at trial by two eyewitnesses to the robbery and one witness who observed the robbers leave the office and ride the elevator to the first floor. All three had an opportunity to observe the defendant at close range under well-lighted conditions. The defendant argues, however, that because he produced alibi testimony the State has not met its burden of proof beyond a reasonable doubt. Illinois courts have consistently held that a positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction. *People v. Williams* (1975), 60 Ill. 2d 1, 12, 322 N.E.2d 819, 825; *People v. Clarke* (1971), 50 Ill. 2d 104, 110, 277 N.E.2d 866, 870.

■■ It is clear from the record in the instant case that the jury was

satisfied, beyond a reasonable doubt, that the defendant was present when the Mercantile Exchange was robbed and was not at his mother's beauty salon having his hair set. We will not disturb that finding.

Finally, the defendant maintains that the trial court committed reversible error when it admitted a statement allegedly elicited from the defendant which prejudiced his case before the jury. Defendant admits the statement did not amount to a confession. On defendant's motion, a pretrial hearing was held to determine the admissibility of those incriminating statements. At that hearing two detectives described the circumstances giving rise to the statement in question. They both testified that, pursuant to a tip, they arrested the defendant on October 11, 1974, and took him to the Rockford police station. Before questioning, the defendant was advised of his rights, signed a "waiver of rights" form and then agreed to participate in a lineup. Following the lineup he was charged with the Mercantile Exchange robbery and when he refused to answer any questions the interrogation ceased and he was placed in his cell. The following morning the same two officers met the defendant in an interrogation room and the defendant at first stated that he was willing to talk to them. He was again advised of his rights but refused to offer any information about the robbery. At this point, one of the detectives said, "Well, you probably wouldn't say anything if you could walk out of here scot-free." According to both detectives, the defendant responded, "that would be a different story," and when asked what he meant, made the statements which he later sought to suppress. He told the officers that he could give them the names of the two other men involved in the robbery if he could be assured of a parole violation rather than an armed robbery charge. He further suggested that the police would probably find these men armed, and that one of them was a "stick-up artist." The defendant did not testify at the hearing to suppress and at that time offered no evidence to refute the testimony of the two detectives.

At trial the detectives testified as to these statements, but the defendant took the stand and denied that he had made them. Defendant also testified that the police officers in questioning him, first suggested the exchange of the names of the robbers for a parole violation charge rather than the instant robbery. He refused to say anything more "without some assurances he wouldn't be charged with armed robbery." Defendant further testified that "Officer Donelli got on the phone and called somebody at the courthouse * * *." At trial Officer Otwell, when questioned as to this, testified, "I believe he [Donelli] contacted someone in the State's Attorney's office." While there is conflict between defendant's trial testimony and that of the police officers, we do not find any evidence of a promise of leniency, viz., a parole violation charge instead of the armed robbery charge in exchange for the names of the two

robbers in question, except the testimony of the defendant himself at trial.

The question raised on appeal is whether or not the conduct of the Rockford police violated the *Miranda* guidelines. In that landmark case, *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the United States Supreme Court stated:

> "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723.

In a case similar to the instant situation, *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, the Supreme Court examined the above quoted passage from *Miranda* and concluded:

> "This passage states that 'the interrogation must cease' when the person in custody indicates that 'he wishes to remain silent.' It does not state under what circumstances, if any, a resumption of questioning is permissible. The passage could be literally read to mean that a person who has invoked his 'right to silence' can never again be subjected to custodial interrogation by any police officer at any time or place on any subject. Another possible construction of the passage would characterize 'any statement taken after the person invokes his privilege' as 'the product of compulsion' and would therefore mandate its exclusion from evidence, even if it were volunteered by the person in custody without any further interrogation whatever. Or the passage could be interpreted to require only the immediate cessation of questioning, and to permit a resumption of interrogation after a momentary respite." 423 U.S. 96, 101-02, 46 L. Ed. 2d 313, 320.

In that case, the defendant had been arrested on robbery charges and after being given the *Miranda* warnings, he refused to make a statement. Interrogation was discontinued and after an interval of more than two hours, another detective advised the defendant of his rights and questioned him about an unrelated murder. At that point the defendant made an incriminating statement, the admissibility of which was upheld by the United States Supreme Court. In allowing the statements into evidence, the court stated:

> "This is not a case, therefore, where the police failed to honor a

decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U.S. 96, 105-06, 46 L. Ed. 2d 313, 322.

In the instant case the police discontinued their initial interrogation when the defendant refused to answer questions. A significant period of time passed before the detectives again advised him of his rights and, although they were still investigating the same crime, the defendant voluntarily agreed to talk with them.

■■ We hold that the statements in the instant case were not obtained in violation of *Miranda* and that the defendant voluntarily made those statements after being afforded the protection outlined in *Michigan v. Mosley.*

Alternately, the defendant argues that the statements were not voluntary because they were coerced. He alleges that the detectives' statement "you probably wouldn't say anything if you could walk out of here scot-free" was an offer of leniency which made his reply involuntary.

In *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 770, 336 N.E.2d 50, 54, the court held that,

> "Since voluntariness is to be determined from the totality of the circumstances other factors such as the age, intelligence, and experience of the defendant, the length and intensity of the interrogation, and prior refusals to answer questions may also be considered. [Citations.]"

In *Ruegger* the court examined the effect of an offer of leniency on a subsequent statement. The court decided, in that case, that hopes of leniency in the defendant's mind had prompted his incriminating statement.

■■ In the instant case, however, the simple statement made by the detective that the defendant would not talk even if he could go "scot-free" cannot be reasonably interpreted to be an offer of leniency which resulted in an involuntary response. Reviewing the testimony given by the two detectives at the hearing on the motion to suppress, and further reviewing the testimony of the defendant at trial as opposed to that of the two officers in question, we conclude that no promises were made and no coercion was present when the defendant told the police he could name two other robbers if he could be guaranteed a lesser charge. We further find that if any error were committed by the admission of the alleged incriminating statement, that the same is harmless beyond a reasonable

doubt in the light of the positive identification of the defendant by two victims who had ample opportunity to observe the defendant at the time of the robbery, as well as by the identification of the defendant by Mr. Lunnon in the elevator as the three robbers were leaving the building.

For the reasons stated above, we affirm the judgment entered below.

Affirmed.

RECHENMACHER and SEIDENFELD, JJ., concur.