THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED RICH-MOND, Defendant-Appellant.

(No. 60363;

First District (1st Division)—November 17, 1975.

SIMON, J., dissenting.

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Zachary Stanger, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Defendant Fred Richmond was indicted and tried for burglary, theft, and possession of burglary tools. (Ill. Rev. Stat. 1971, ch. 38, pars. 19—1, 16—1, 19—2.) A jury found defendant guilty and he was sentenced to concurrent terms of 4 to 12 years' imprisonment for burglary and 1 to 3 years' imprisonment for possession of burglary tools. Defendant contends on appeal: (1) that he was not proven guilty beyond a reasonable doubt on each of the three crimes charged; and (2) that he was denied a speedy trial in violation of section 103—5 of the Code of Criminal Procedure, which provides:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *." Ill. Rev. Stat. 1971, ch. 38, par. 103—5(a).

On June 28, 1973, Henry Kowitz, the building engineer for a residential building located at 2007 North Sedgwick in Chicago, received a telephone call at approximately 6 a.m. alerting him that prowlers were in the basement garage of the building. Kowitz proceeded from his apartment inside the building to the lower level garage armed with a revolver. Once he entered the floor of the parking area, Kowitz discovered the defendant standing at the rear of a Dodge van. When Kowitz inquired into the reason for defendant's presence in the garage, the defendant replied that he was looking for a doctor. At that moment, the overhead garage door opened and Kowitz heard someone escape from the opposite end of the inside parking area. Kowitz held the defendant by gunpoint until the police arrived.

Five tenant-owned bicycles, taken from a bicycle rack located in the garage, were found in the rear of the van. The lock chain which winds through the bicycle wheels parked at the rack had been cut. Kowitz found that the door frame of the front entrance to the garage had been chiseled allowing entry without a key. Kowitz testified that no doctor lived in the building on the day of the occurrence. However, Kowitz

admitted during cross-examination that a doctor had lived in the building at a previous time.

John Murray and Walter Newton were the Chicago police officers to first arrive on the scene. The defendant told Officer Murray that he lived at 114th Street and Bensley in Chicago and that he was looking for a doctor. The officers found the following items inside the front seat area of the van: a 12-inch bolt cutter, a tire iron, a black glove, and an ignition switch which had been pulled out from the dashboard. The items were properly identified and introduced into evidence. Parked in the garage was a brown van with the name "Beacon House" marked on its side.

Coleman Miller, a social worker and director of the Beacon Neighborhood House, testified that the brown, 1973 Dodge van was owned by the Beacon House corporation. The marking on the van's side read, "Beacon Neighborhood House, 1440 South Ashland Avenue, Chicago, Illinois CH 3-8100, Mrs. Ruby Robinson." On June 27, 1973, one of the employees of Beacon House parked the van at a service station located on Paulina Avenue and Washington Street at approximately 6 p.m. The service station was the van's normal parking place. The employee locked the van and retained possession of the keys. On June 28, 1973, Coleman identified the van at the police station on Chicago Avenue. The side vent glass on the driver's door had been forced open, and the ignition switch was found dangling by its wires from the dashboard.

Defendant's arrest occurred June 28, 1973. He was indicted on August 4, 1973, and arraigned on August 13, 1973. On the day of defendant's arraignment, the cause was assigned to Judge White for trial by the Presiding Judge of the Criminal Division, Judge Power. Defendant filed a petition for a substitution of judges before Judge White and the petition was granted. The cause was returned to Presiding Judge Power, who reassigned it to Judge Strayhorn for trial. The reassignment was completed on August 13, 1973. The cause was continued to the following day, August 14, 1973, pursuant to defendant's motion.

The State and defendant exchanged discovery motions on August 14, 1973. The cause was subsequently continued on three separate occasions by order of court until November 29, 1973. Defendant thereupon sought discharge on the ground that he had not been brought to trial within the 120-day period prescribed by section 103—5 of the Code of Criminal Procedure. The trial court denied defendant's request for discharge on the ground that defendant's motion for substitution of judges tolled the 120-day period on August 13. Trial commenced December 10, 1973, 118 days after the start of a new period.

Defendant contends that the tolling of the 120-day period denied his right to a speedy trial. He argues that no actual delay resulted from his motion for substitution of judges because the assignment and reassignment of judges was completed on the same date with 75 days remaining in the 120-day period. Moreover, defendant claims that his statutory right to substitute judges is compromised if delay is attributed to him as a result of his motion.

■■■ Section 103—5 of the Code of Criminal Procedure implements the right to a speedy trial and operates to prevent the constitutional question from arising except in cases involving prolonged delay or unusual circumstances. (*People v. Baskin*, 38 Ill.2d 141, 144, 230 N.E.2d 208, 210.) The right to a speedy trial and the right to avoid a prejudicial trial are "separate but related rights" which must be balanced with society's interest in the fair administration of justice. (*People v. Johnson*, 45 Ill.2d 38, 43, 257 N.E.2d 3, 7.) The accused may always exercise his right to avoid a prejudicial trial by electing to substitute judges. (Ill. Rev. Stat. 1965, ch. 38, par. 114—5.) However, the election "starts anew the administrative procedure" of bringing the accused to trial. (*People v. Spicuzza*, 57 Ill.2d 152, 155, 311 N.E.2d 112, 114.) Since the question was first considered, our Supreme Court has repeatedly held that the tolling of the 120-day period for the purpose of insuring ample time for the case to be scheduled for trial on a new judge's calendar is not a denial of the accused's right to a speedy trial. (*People v. Iasello*, 410 Ill. 252, 102 N.E.2d 138; *People v. Rankins*, 18 Ill.2d 260, 163 N.E.2d 814.) To hold otherwise would ignore the practical administrative problems in the criminal division which has compelled the utilization of a balancing concept by the decisions of this court and the Supreme Court. Those decisions directly refute the proposition that a motion for substitution of judges does not necessarily cause a delay attributable to the defendant.

In *People v. Nowak*, 45 Ill.2d 158, 258 N.E.2d 313, the defendant moved for a substitution of judges on January 7, 38 days after he had been taken into custody. On the day following his motion, January 8, defendant was reassigned to a new judge who set trial on the same date which had been designated by the first trial judge. The Supreme Court held that the motion for substitution of judges tolled the 120-day period under facts similar to those in the instant case. The court rejected defendant's argument that no delay resulted from the motion with the following statement:

> "Rosochacki's motion for a change of venue on January 7 made it necessary to send the case back to the presiding judge for reassignment and reopened the question of a trial date. Defendant

argues that there was no delay because the date fixed for trial after the case had been assigned to Judge Healy was the same as that which had been set by Judge Plusdrak. The fallacy of this argument becomes apparent when we remember that the selection of a date before Judge Healy was entirely dependent on the schedule of other cases in his court. The fortuitous circumstance that the same date happened to be available does not change the true nature of the initial proceedings before Judge Healy which involved the selection of a trial date as the first item on the agenda." 45 Ill.2d 158, 166.

In *People v. Zuniga*, 53 Ill.2d 550, 293 N.E.2d 595, the defendant was arraigned and assigned to a trial judge on October 28, 11 days after being taken into custody. On November 7, defendant moved for a substitution of judges and on the same date a new judge was assigned to the cause. With facts similar to those in the instant case, the Supreme Court held that the 120-day period was tolled by defendant's motion for a substitution of judges:

"In any event, the cases lost whatever seniority status they had acquired on this judge's calendar and had to be returned to the presiding judge for reassignment to another trial judge. The defendant's cases then assumed their position on that judge's calendar, presumably at the bottom of the list of pending cases. Without knowing the exact condition of each judge's calendar and length of time required to dispose of each case thereon it is impossible to state whether the motion for a substitution of judges actually delayed bringing the defendant's cases to trial or advanced them as the appellate court found. We do know that the motion and reassignment started anew the administrative procedure of bringing the defendant's cases to trial. The mere fact that the defendant had his cases advanced from November 28 to November 7 for the purpose of presenting his motion does not distinguish this case from our holdings in *People v. Iasello* and *People v. Rankins*. We hold that the proper date from which the 120-day period is to be computed is November 7, the date of the motion for substitution of judges." 53 Ill.2d 550, 554.

■■ In *People v. Walker*, 100 Ill.App.2d 282, 241 N.E.2d 594, this court decided the issue at bar with a nearly identical set of facts. Defendant was arraigned and assigned to a trial judge on September 22, 40 days after he had been taken into custody. Before a trial date could be designated, defendant was reassigned to a new trial judge on September 23, the day following the original assignment. The record reflected several continuances upon motion of the trial court. The defendant in *Walker*

argued that his motion for a substitution of judges did not cause or contribute to the delay in the proceedings. We rejected that argument with a thorough analysis of relevant Supreme Court opinions and concluded the following:

"It is the court's opinion that defendant's motion to substitute judges of necessity caused certain disruption and some delay although that delay be administrative in nature and unascertainable in duration from the state of the record." 100 Ill.App.2d 282, 289.

As the foregoing decisions indicate, it is impossible to determine if the transfer of defendant's case to another judge's calendar actually advanced or delayed bringing the case to trial. However, it is the nature of the motion itself which causes administrative delay. The decisions as a whole reflect a view that the administrative delay occasioned by a motion for a substitution of judges is significant enough to toll the 120-day period. We agree and hold that it was correct to toll the running of the 120-day period on August 13, the date of defendant's motion for a substitution of judges. We cannot find any justification for defendant's claim that his right to a speedy trial was denied.

■■ Defendant's second contention that he was not proved guilty beyond a reasonable doubt is without merit. The defendant was caught trespassing on private property in a closed garage with a stolen van at approximately 6 o'clock in the morning. Uncontradicted testimony established that all of the entrances to the building had been locked and that the front door of the garage had been forced open. Five tenant-owned bicycles were cut loose from a locked rack and stored in the rear of the van. The defendant, a resident of the south side of Chicago, did not give a viable explanation to the police as to why he would be searching for a doctor at such an early hour in the garage of a north side residential building. A conviction can be sustained upon circumstantial evidence as well as upon direct evidence. (*People v. Hansen*, 5 Ill.2d 535, 126 N.E.2d 243.) The jury's evaluation of the weight and credibility of the testimony will not be disturbed unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Clark*, 52 Ill.2d 374, 288 N.E.2d 363.) The evidence fully supports the convictions.

■■ However, there is nothing in the record which indicates that the acts which constituted the crime of burglary were independently motivated or otherwise separable from the conduct which constituted the offense of possession of burglary tools. Under the circumstances of this case, the conviction for the offense of possession of burglary tools is

vacated. *People v. Lilly,* 56 Ill.2d 493, 309 N.E.2d 1; *People v. Blahuta,* 131 Ill.App.2d 200, 264 N.E.2d 819.

The judgment as modified is affirmed.

Judgment as modified affirmed.

GOLDBERG, J., concurs.

Mr. JUSTICE SIMON, dissenting:

I am unable to agree with the majority on the application of the Illinois statute granting a person in custody the right to be tried within 120 days from his arrest unless he occasions a delay. Ill. Rev. Stat. 1973, ch. 38, § 103—5.

I cannot understand how a petition for substitution of a judge made in this case on the day of the arraignment and assignment to the judge and accomplished the same day within a matter of minutes or at most a few hours by reassignment to a different judge can possibly have occasioned delay preventing a trial within 120 days. In determining whether delay was "occasioned by the defendant," the court is called upon to decide whether the defendant's acts in fact caused or contributed to the delay which carried the commencement of the trial beyond the 120-day period. (*People v. Nunnery* (1973), 54 Ill.2d 372, 297 N.E.2d 129; *People v. Fosdick* (1967), 36 Ill.2d 524, 224 N.E.2d 242.) Because of the prompt presentation of the defendant's motion for substitution of judges in this case, it did not interfere with the opportunity of the State to bring him to trial within 120 days.

The decisions relied on by the majority should not be regarded as controlling in this case because none of them involve a motion for substitution presented on the same day as the arraignment and original assignment to a trial judge together with reassignment on that very day.

In *People v. Spicuzza* (1974), 57 Ill.2d 152, 311 N.E.2d 112, the motion for change of venue was presented on the day set for trial, which was the 115th day of the 120-day period. Similarly, the reassignment in *People v. Rankins* (1960), 18 Ill.2d 260, 163 N.E.2d 814, was made 119 days after the last continuance granted to the defendant. In *People v. Zuniga* (1973), 53 Ill.2d 550, 293 N.E.2d 595, the motion for substitution was made 10 days after the original assignment, at a time when the case had already achieved some priority on the trial calendar of the judge to whom it was first assigned. *People v. Iasello* (1951), 410 Ill. 252, 102 N.E.2d 138, involved a reassignment because of a motion for a separate trial from codefendants as well as a motion for substitution of judges presented when, as the Supreme Court put it, "the cause was

on call for trial." (410 Ill. 252, 255.) In *People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313, the 120-day period was interrupted not only by a request for substitution of judges, but by requests for competency hearings as well. Thus, although the second judge assigned in *Nowak* set the trial for the same date set by the original judge, the competency hearing, which under the 120-day statute started the running of a new term, prevented trial within the initial 120-day period.

*Spicuzza* and *Zuniga* do not establish an inflexible rule that the exercise by a defendant of his right to request a substitution of judges pursuant to section 114—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, § 114—5) automatically disrupts the running of the 120-day period without regard to whether his motion results in actual delay. In *Spicuzza,* the court emphasized that the effect of delaying the motion to disqualify the only two judges who had entered orders in the case until the day of trial was that "a delay resulted which was attributable to the defendant." (57 Ill.2d 152, 155.) In this case the motion for substitution was presented at the earliest possible moment and before the case could have obtained any position of priority on the trial calendar of the first judge. Since the reassignment was made on the same day, the defendant's objection to the judge could not have delayed his trial. If the circumstances are viewed so technically that the court concludes there was some delay, it could not have been for more than a few minutes or at most a few hours. Under any reasonable interpretation of the 120-day statute, this must be regarded as *de minimus.*

The facts in *People v. Walker* (1968), 100 Ill.App.2d 282, 241 N.E.2d 594 are more like those in this case than any of the other authorities cited by the majority. In *Walker* the motion for substitution was not made until the day following the original assignment, although no trial date had been designated. Thus, the motion for substitution was not as prompt as in this case. The court in *Walker* reasoned that the motion for substitution of judges of necessity caused certain disruption and some delay and that it had an adverse effect upon the orderly administrative process. The court failed, however, to specify the nature of the disruption or the way in which its effect was adverse, and the concepts relied upon in *Walker* to rationalize that there was delay are entirely too nebulous to convince me that the 120-day term did not expire in this case.

Although the majority opinion and some of the cases on which it relies caution us not to ignore the practical administrative problems in the criminal courts and that a substitution of judges necessarily causes administrative delay, I am unable to put my finger on what those administrative problems are or what delay could possibly have been caused in

this case. There may have been some paperwork involved in reassigning this case to a new judge, and the motion for substitution involved an appearance before the first judge followed by a second appearance before the presiding judge for the purpose of reassignment. However, the procedures the defendant set in motion by his petition had such trifling consequences there is no justification for holding that judicial administration is not elastic enough to accommodate his right to be tried before an impartial judge as well as his right to trial within 120 days. The constitutional guarantee of a speedy trial which the 120-day rule is designed to implement is meaningless if the rule is emasculated by narrow and technical interpretations.

I take note of the majority's stated attempt to balance the right to a speedy trial with society's interest in the fair administration of justice. However, the 120-day rule is a device which serves society's interest by relieving overcrowded county jails and speeding up the administration of justice as well as by providing a statutory implementation of the constitutional guarantee to a speedy trial. In the era of increasing crime in which we unfortunately live, it is incumbent upon courts to apply the 120-day rule to mean what it says. Otherwise, notwithstanding a recent amendment to the statute[1] providing for temporary suspension of the running of the period when delay is occasioned by the defendant in contrast with the present procedure of starting a new 120-day period, society will have no way of providing enough detention centers to house the numbers of prisoners awaiting trial.

I, therefore, believe that the conviction should be reversed.

---

[1] P.A. No. 79-842 (September 8, 1975) amending section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. ch. 38, § 103—5).