THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD W. WEDDELL, Defendant-Appellant.

Second District    No. 2—09—0543

Opinion filed October 26, 2010.

Larry Wechter, of Law Office of Larry Wechter, of Geneva, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE JORGENSEN delivered the opinion of the court:

Following a bench trial, defendant, Ronald W. Weddell, was convicted of driving under the influence (DUI) (625 ILCS 5/11—501(a)(1), (a)(2) (West 2006)) and sentenced to two years' probation. Defendant appeals, arguing that he was deprived of his right to a speedy trial because: (1) the State's *nolle prosequi* of misdemeanor DUI charges did not toll the speedy-trial term, as the State later refiled identical charges; and (2) the trial court occasioned a delay when it did not immediately reassign the case to another judge following defendant's motion for substitution of judge. We affirm.

## I. BACKGROUND

### A. Underlying Offense

During the early morning of May 17, 2007, Bartlett police officer Jim Zefo received a dispatch concerning a reckless driver (*i.e.*, defendant) in a blue van near the intersection of Route 59 and Stearns

Road. Zefo noticed defendant stopped at a train crossing. When the train passed, defendant accelerated to speeds of 80 to 90 miles per hour in a 50-mile-per-hour zone. Zefo activated his overhead lights but defendant continued to drive for another half mile. Defendant finally stopped at a red light.

Zefo approached defendant's vehicle. Defendant remained in the vehicle but spoke to Zefo through an open window. According to Zefo, defendant smelled of alcohol and his eyes were red, bloodshot, and glassy. Against Zefo's orders, defendant put a mint in his mouth, presumably to obscure the scent of alcohol. Zefo then directed defendant to produce his license and insurance, but defendant refused and drove away from the scene. Zefo lost contact with defendant. However, Zefo released a dispatch sending other officers to look for defendant.

St. Charles police officer Michael Ross received Zefo's dispatch. He located a van matching the description of defendant's van in a garage located in St. Charles. Ross knocked on the door of the adjoining home, and defendant's wife opened the door. Ross searched the property, ultimately finding defendant in a playhouse in the backyard. Defendant emerged from the playhouse and walked toward his wife in a threatening manner. Ross placed defendant in the squad car, and defendant kicked the rear driver's side window, causing the glass to crack in a web pattern across the entire window.

At the police station nearly two hours after the initial traffic stop, defendant's blood-alcohol content (BAC) registered at 0.181. However, defendant told police that he drank a bottle of liquor while in the playhouse. Defendant also told police that he had a panic attack, which was why he drove away from Zefo.

## B. Initial Charges by Police Complaint

Also on May 17, 2007, police charged defendant by complaint with four misdemeanor counts: (1) DUI—BAC over 0.08 (625 ILCS 5/11—501(a)(1) (West 2006)); (2) DUI—under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2006)); (3) fleeing from or eluding a police officer (625 ILCS 5/11—204(a) (West 2006)); and (4) speeding (625 ILCS 5/11—601(b) (West 2006)). These charges all fell under Du Page County case No. 07—DT—2399.

## C. Speedy-Trial Term: Effect of *Nolle Prosequi*

On June 12, 2007, defendant requested a speedy trial on the four charged counts under section 103—5(b) of the Code of Criminal Procedure of 1963 (Code), which provides that every defendant on bail or recognizance shall be tried within 160 days from the date he or she demands trial, unless said delay is occasioned by the defendant. 725

ILCS 5/103—5(b) (West 2006). Defendant then requested a series of continuances through December 11, 2007. Both parties agree that the speedy-trial term did not run during this period.

On December 11, 2007, defendant answered ready for trial. The State requested, and was granted, a continuance due to the unavailability of a police witness. The trial was continued until February 27, 2008, a period of 78 days.

On February 27, 2008, defendant again answered ready for trial. The State indicated that it did not want to answer one way or the other whether it was ready for trial until it received an assurance that witness Zefo would be there. The State requested to pass the case. Upon a recall of the case later that morning, the State did not address the question of Zefo's availability. Instead, it moved to nol-pros case No. 07—DT—2399, informing the court that it sought dismissal so that it could enhance the initial charges to felonies.

On March 25, 2008, the State filed a three-count felony indictment against defendant, alleging: (1) obstruction of justice (to prevent apprehension) (720 ILCS 5/31—4(a) (West 2006)); (2) obstruction of justice (to prevent prosecution) (720 ILCS 5/31—4(a) (West 2006)); and (3) aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11—204.1(a)(1) (West 2006)). These charges all fell under Du Page County case No. 08—CF—835.

On April 22, 2008, at the first appearance on case No. 08—CF—835, the State filed by information two counts of misdemeanor DUI. 625 ILCS 5/11—501(a)(1), (a)(2) (West 2006). These charges are identical to the misdemeanor DUI charges that police had filed in case No. 07—DT—2399, for which defendant had requested a speedy trial on June 12, 2007, and which the State had nol-prossed on February 27, 2008. The parties refer to these charges as counts IV and V in case No. 08—CF—835.

Also on April 22, 2008, defendant filed another demand for speedy trial. However, he agreed to a continuance until May 7, 2008.

On May 7, 2008, defendant moved to dismiss the three *felony* charges on speedy-trial grounds. This speedy-trial issue is relevant to only the procedural history of the case, as defendant was ultimately convicted of only the *misdemeanor* DUI counts. Regarding the felony charges, defendant contended that, pursuant to the compulsory-joinder statute (720 ILCS 5/3—3 (West 2006)), the State should have included the felony charges in case No. 07—DT—2399. Moreover, defendant, citing *People v. Quigley*, 183 Ill. 2d 1 (1998), argued that, where new and additional charges arise from the same facts as the original charges, and the State had knowledge of these facts at the commencement of the prosecution, the time at which trial is to begin on the new

and additional charges is subject to the same statutory limitation that is applied to the original charges under the speedy-trial statute. Additionally, defendant, citing *People v. Williams*, 204 Ill. 2d 191 (2003), argued that any delays attributable to him on the original charges did not apply to the new charges because they were not before the court when he obtained said continuances. Defendant noted that 288 days had elapsed from the date of his original speedy-trial demand to the date the State filed the three-count felony indictment, and he concluded that his right to a speedy trial had been violated.

On June 9, 2008, at the hearing on defendant's motion to dismiss the three felony charges, the State conceded that the speedy-trial term had elapsed as to the three felony counts.[1] The trial court dismissed the three felony counts (counts I, II, and III in case No. 08—CF—835) and transferred the remaining counts (misdemeanor DUI counts IV and V in case No. 08—CF—835) to a misdemeanor courtroom.

One month later, on July 9, 2008, defendant moved to dismiss the misdemeanor DUI counts, alleging a speedy-trial violation as to these counts as well. This speedy-trial issue *is* relevant to the merits of the appeal. Defendant argued that the State's *nolle prosequi* did *not* toll the speedy-trial term, because the State refiled identical misdemeanor DUI charges. Thus, defendant counted the days as follows: December 11, 2007, to February 27, 2008, the date on which the trial court accepted the State's *nolle prosequi* in case No. 07—DT—2399 (78 days); February 28, 2008, to April 22, 2008, the term during which no misdemeanor DUI charges against defendant were pending (55 days); and June 9, 2008, the date on which the State refiled the misdemeanor DUI charges in case No. 08—CF—835, to July 9, 2008 (30 days); totaling 163 days.

The State, citing *People v. Decatur*, 191 Ill. App. 3d 1034, 1037-41 (1998), responded that the speedy-trial term is tolled when a trial court grants the State's motion to nol-pros until identical charges are refiled and the defendant is once again taken into custody, *unless* there is a "clear showing" that the State sought *nolle prosequi* to evade the speedy-trial statute or otherwise disadvantage the defendant. Thus, the State counted the days as follows: December 11, 2007, to

---

[1]On appeal, the State contends (in a footnote) that it should not have conceded this point, arguing that compulsory joinder does not apply to traffic offenses that are charged by complaint forms drafted by a police officer, as here, and that a defendant can be separately prosecuted on traffic complaints filed by police officers, independent of felony offenses arising out of the same incident that are charged by the State's indictment. See *People v. Klein*, 393 Ill. App. 3d 536, 548 (2009); *People v. Sandoval*, 381 Ill. App. 3d 142, 152 (2008).

February 27, 2008 (78 days), and June 9, 2008, to July 9, 2008 (30 days), for a total of 108 days.

On August 27, 2008, the trial court held a hearing on defendant's motion to dismiss. At the hearing, both parties seemed to agree that the law as set forth in *Decatur* controlled. The defense argued under the exception set forth in *Decatur* that the State attempted to evade speedy-trial requirements when it sought *nolle prosequi* and that, therefore, the 55 days between the State's *nolle prosequi* and refiling of identical charges should count against the State in calculating the speedy-trial term. The defense also alleged that the State sought to gain tactical advantage over defendant by requiring him to post bond on the felony charges, which the State brought subsequent to the *nolle prosequi*. However, the defense did *not* mention the State's reluctance to answer ready for trial based on the question of witness Zefo's availability, its request to pass the case, and, upon return to session, its request to nol-pros the case without reference to the question of Zefo's availability.

The State responded that it had sought *nolle prosequi* in good faith and that, therefore, the speedy-trial term should have been tolled. The State noted that it sought dismissal of the misdemeanor DUI charges so that it could file felony charges against defendant.

The trial court found that the *nolle prosequi* tolled the speedy-trial term, stating:

> "I don't think there is any *** clear-cut pattern that the State [attempted] to evade the speedy trial statute at the time the case was *nol[-]prossed*. Only 78 days had elapsed. I really don't think they were trying to manipulate the system even though apparently their plans didn't work out on the additional [felony] charges."

The trial court denied the motion to dismiss and the speedy-trial count was left at 108 days.

After denying defendant's motion to dismiss, the trial court took care of administrative matters. Defendant waived his right to a jury trial and acquiesced to a continuance to November 24, 2008. The State then requested a continuance to January 14, 2009, bringing the count to 159 days.

### D. Speedy-Trial Term: Effect of Motion to Substitute

On January 14, 2009, day 159 of the speedy-trial term (assuming the State's *nolle prosequi* did indeed toll the term), defendant answered ready for trial, as did the State. The trial judge, Ronald Sutter, acknowledged that the case was nearing the end of the speedy-trial term but stated that he was presiding over a jury trial that week and could not guarantee its conclusion prior to the end of the speedy-trial term in the instant case. Judge Sutter informed the parties that he would try to obtain another judge to hear the case that day (Janu-

ary 14, 2009) and that, if he was unable to find a new judge, he would continue the case to January 15, 2009, in hopes that the jury trial would be over. In response to Judge Sutter's proposal, defense counsel answered: "All right. Thank you, judge."

When Judge Sutter returned, he informed the parties that Judge Brian Diamond was available to hear the case that day. Defense counsel immediately responded, "We would ask to exercise as of right a substitution of Judge Diamond." Defense counsel informed Judge Sutter that, while he was out and after consulting with defendant, she drafted and was ready to tender the motion to substitute. Defense counsel began to discuss the possibility of a trial the next day, presumably to be heard by Judge Sutter. Judge Sutter interjected (and the following exchange took place):

"THE COURT: Well, we can have [the trial] today [with Judge Diamond]; but you're exercising your right for a substitution.

MS. COLTON [for defendant]: And, Judge, I will tender that to you.

THE COURT: Then I'm going to give you another trial date which will toll the speedy trial based on the substitution, and it's not going to be tomorrow. Because I was going to hold it day to day. That was my plan, but I don't know if I'll finish my jury tomorrow even. So I'm just going to have to give you another trial date.

MS. COLTON: Well, Judge, so it's clear to the court, we're available tomorrow if the court wanted us to come back.

THE COURT: I understand that, but I don't think that's going to work out so well. So I apologize. That was my indication; but that was provided I couldn't find anyone to hear it today, so.

MS. MEINDEL [for the State]: And, Judge, just for the record, I know that the order that the defendant just provided to your Honor states that this motion is made as of a matter of right and not in an effort to delay the proceedings, but I would also point out to the court that this order was filled out without the judge's name, so I think it was the defendant's intention—

THE COURT: Well, it doesn't matter.

MS. MEINDEL: —once she heard the name to put any judge's name in there.

THE COURT: It doesn't matter because it still tolls the speedy trial, right?

MS. COLTON: Correct. And, Judge, we have the absolute right—

THE COURT: Absolutely.

MS. COLTON: —to substitute one judge, any judge.

THE COURT: Any judge, one judge. So it doesn't bother me that the order was filled out. That's really neither here nor there. What's important is we get this case heard for trial within the time allowed by law. And we have taken a waiver already, correct?

MS. COLTON: Yes.

THE COURT: Okay. March 30, [2009], 9:30. Are you available that day?

THE DEFENDANT: Sure.

THE COURT: Okay. Are you available, Ms. Colton?

MS. COLTON: Yes.

THE COURT: *** March 30. 9:30. [B]ench trial and speedy trial tolled. And I want to apologize to all of you. It's an unusual situation. Normally, you know—actually, I don't think I've had to deal with this specific situation since I've been hearing this call for two—over two years now."

On March 30, 2009, the case proceeded to bench trial and the trial court found defendant guilty of both counts of misdemeanor DUI. 625 ILCS 5/11—501(a)(1), (a)(2) (West 2006). The court sentenced defendant to two years' probation. Defendant did not challenge in a posttrial motion the court's January 14, 2009, determination that the motion to substitute tolled the speedy-trial term. This appeal followed.

## II. ANALYSIS

Defendant argues that he was deprived of his right to a speedy trial and that the trial court, therefore, should have dismissed his case. Under section 103—5(b) of the Code, every defendant on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date he or she demands trial, unless said delay is occasioned by the defendant. 725 ILCS 5/103—5(b) (West 2006). Generally, the trial court's determination as to who is responsible for a delay is entitled to much deference and should be sustained absent a clear showing that the trial court abused its discretion. *People v. Kliner*, 185 Ill. 2d 81, 115 (1998).

Defendant's primary argument is that he was denied his right to a speedy trial because the State's *nolle prosequi* of the misdemeanor DUI charges and subsequent refiling of the same did not toll the term for the 55-day period between February 28, 2008, and April 22, 2008. Alternatively, defendant argues that he should not have been charged with the delay that resulted when he exercised his statutory right to substitute the trial judge.

### A. The State's *Nolle Prosequi* Tolled the Speedy-Trial Term

Defendant first argues that the State's *nolle prosequi* did not toll the speedy-trial term and that, therefore, his right to a speedy trial was violated.

#### 1. *Current Law: Effect of Van Schoyck*

We initially note that the instant case involves a fact pattern wherein the State chose to nol-pros misdemeanor DUI charges *before*

the speedy-trial term on those charges had lapsed (*i.e.*, on day 78 of the term) and later refiled identical misdemeanor DUI charges based on acts identical to those that had formed the basis of the initial charges. At the August 27, 2008, hearing, the trial court based its decision—that the speedy-trial term was tolled upon the *nolle prosequi* of the initial misdemeanor DUI charges and resumed upon the refiling of the identical misdemeanor DUI charges—on the law as set forth in *Decatur*. The parties agreed that this was the appropriate standard.

Again, under *Decatur*, when the State is granted a *nolle prosequi* and the defendant is released from custody, bail, or recognizance, the statutory speedy-trial term is tolled until such time as identical charges are refiled and the defendant is again taken into custody or otherwise held within the court's jurisdiction. *Decatur*, 191 Ill. App. 3d at 1039; see also 5 L. Pieczynski, Ill. Prac. §10:17 (2009) (the State's motion for *nolle prosequi* tolls the speedy-trial term since the defendant is not held to bond). Also, under *Decatur*, in order for this tolling to be inoperative, there must be a "clear showing" that the State sought the *nolle prosequi* to gain some tactical advantage over the defendant or to otherwise harass or prejudice the defendant so as to avoid or frustrate the interests that the speedy-trial right was designed to protect. *Decatur*, 191 Ill. App. 3d at 1039; see also *People v. Watson*, 394 Ill. 177, 180 (1946); *People v. Martin*, 183 Ill. App. 3d 442, 444 (1989); *People v. Stinnett*, 166 Ill. App. 3d 1027, 1028 (1988). The interests that the speedy-trial right was designed to protect are: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the defense might be impaired. *Decatur*, 191 Ill. App. 3d at 1039-40, citing *Barker v. Wingo*, 407 U.S. 514, 532, 33 L. Ed. 2d 101, 118, 92 S. Ct. 2182, 2193 (1972).

The *Decatur* court relied in part on *People v. Fosdick*, 36 Ill. 2d 524, 528 (1967), which was one of the first cases to hold, generally, that a voluntary dismissal on the part of the State cannot be used to *evade* the provisions of the speedy-trial statute. *Decatur*, 191 Ill. App. 3d at 1038. The *Decatur* court further reasoned that allowing a *nolle prosequi* to toll the statute absent a showing of bad faith would enable the State to meet its dual obligations: (1) its obligation to the defendant to prosecute the case in a timely manner so as to honor the protections afforded to the defendant by his right to a speedy trial; and (2) its obligation to the community at large to prosecute violations of law so as to protect its citizenry. *Decatur*, 191 Ill. App. 3d at 1039.

On appeal, defendant essentially argues that *Decatur* is no longer good law given the following statement by our supreme court in *People v. Van Schoyck*, 232 Ill. 2d 330, 340 (2009): "[V]oluntary dismissal and

the subsequent refiling of identical charges do not toll the statute." Defendant's reading of *Van Schoyck* is a sharp departure from *Decatur* and other cases holding the same, in that prior case law established a presumption that the State's *nolle prosequi* tolls the speedy-trial term and placed the burden on the defendant to rebut that presumption, whereas defendant's reading of *Van Schoyck* creates the opposite presumption. For the following reasons, we reject defendant's reading of *Van Schoyck*.

In *Van Schoyck*, the police charged the defendant by citation with three misdemeanor counts: (1) DUI—BAC over 0.08 (625 ILCS 5/11—501(a)(1) (West 2006)); (2) DUI—driving under the influence (625 ILCS 5/11—501(a)(2) (West 2006)); and (3) driving with a revoked license (625 ILCS 5/6—303 (West 2006)). On December 14, 2004, the defendant appeared in court, entered a plea of not guilty, and demanded a speedy trial. On January 31, 2005, the State filed its appearance in the case and told the court that it would file the charges as felonies by the next court date. The State did not do so by the next court date, and the court continued the case six times at the State's request. The 160-day speedy-trial term passed without any objection raised by the defendant. *Van Schoyck*, 232 Ill. 2d at 333-34.

On September 19, 2005, well after the speedy-trial term had elapsed, the State dismissed the three misdemeanor citations and recharged defendant by information with a single felony charge, DUI—BAC over 0.08, noting in the charge the existence of an enhancing factor (driving on a revoked license) (625 ILCS 5/11—501(a)(1) (West 2006)), which elevated the DUI offense to a felony. *Van Schoyck*, 232 Ill. 2d at 334. On November 29, 2005, the defendant moved to dismiss, arguing that the speedy-trial term, which began on December 14, 2004, had long since elapsed. The trial court denied the motion, and the appellate court affirmed, on the ground that the felony charge was a new case and, therefore, was not subject to the speedy-trial term that began on December 14, 2004. *Van Schoyck*, 232 Ill. 2d at 334.

The supreme court reversed, with three justices dissenting, dismissing the defendant's case for violation of the speedy-trial statute. *Van Schoyck*, 232 Ill. 2d at 340. The majority disagreed with the lower courts that the felony DUI charge was a new case, stating that the information did not charge anything new. According to the majority, the information merely elevated the misdemeanor DUI—BAC over 0.08, initially charged by way of a traffic citation, to a felony. *Van Schoyck*, 232 Ill. 2d at 339. Thus, the felony DUI was subject to the speedy-trial term that began on December 14, 2004. In addressing the defendant's argument that "the State improperly used its power of dismissal to avoid the effect of his speedy trial demand," the court

acknowledged that the State was entitled to nol-pros the original charges and refile identical charges on a later date (so long as jeopardy has not attached). *Van Schoyck*, 232 Ill. 2d at 340. However, the court stated: "[The State's] ability to [nol-pros and later refile identical charges] may be complicated by speedy-trial concerns. For that reason, voluntary dismissal and the subsequent refiling of identical charges do not toll the statute." *Van Schoyck*, 232 Ill. 2d at 340, citing *Fosdick*, 36 Ill. 2d at 528-29.

The Third District in *People v. Klein*, 393 Ill. App. 3d 536, 547 (2009), stated that the *Van Schoyck* court "did not overrule the long history of cases holding that the State could refile the same charge, provided the State was not attempting to evade the speedy trial provisions." The *Klein* court noted that the *Van Schoyck* ruling "was based upon the defendant's contentions that the State improperly used its power of dismissal to avoid the effect of his speedy[-]trial demand" and that it "ultimately focused on long-standing precedent that, when the State's purpose in requesting a *nolle prosequi* is for legitimate reasons, the State may properly refile the same charges because the speedy[-]trial term is tolled until a new charge is filed." *Klein*, 393 Ill. App. 3d at 546-47.

We agree with the *Klein* court's assessment of *Van Schoyck*. Defendant takes out of context the isolated quote in question, that "voluntary dismissal and the subsequent refiling of identical charges do not toll the statute." *Van Schoyck*, 232 Ill. 2d at 340. For one, as noted by the *Klein* court, the question presented by the defendant in *Van Schoyck* was whether "the State improperly used its power of dismissal to avoid the effect of [the] speedy[-]trial demand." *Van Schoyck*, 232 Ill. 2d at 340. Therefore, the defendant in *Van Schoyck* was, in essence, making a challenge under the exception set forth in *Decatur*; the defendant was arguing that the *nolle prosequi* did not toll the statute *because* the State attempted to evade the statute. Thus, the analysis in *Van Schoyck* begins with the premise that the defendant must establish the State's improper attempt to avoid the speedy-trial statute if he seeks to rebut the presumption that the *nolle prosequi* tolled the term.

Additionally, *Van Schoyck* cites *Fosdick* as its authority for the quoted language upon which defendant relies. *Fosdick* held that a *nolle prosequi* cannot be used to "evade the provisions of the 120-day rule." *Fosdick*, 36 Ill. 2d at 528. *Fosdick* is consistent with *Decatur* because *Decatur* also holds that the speedy-trial statute will *not* be tolled if the defendant is able to prove an element of bad faith on the part of the State in seeking the *nolle prosequi*, *i.e.*, an "evasion" of the defendant's speedy-trial demand.

In sum, the *Van Schoyck* court was never presented with the issue of whether it should depart from the law as set forth in *Decatur*, and it never expressed that it was doing so. In the face of a sharp departure from established law, one would expect an accompanying statement of an intent to do so, either specifically or by necessary implication. See, for guidance only, *Andrews v. Kowa Printing Corp.*, 351 Ill. App. 3d 668, 680 (2004) (principle of *statutory* interpretation).

We are not persuaded by defendant's argument that, because the dissent in *Van Schoyck* considered the question of whether the State purposely tried to evade the operation of the speedy-trial statute, the majority rejected the State's technical maneuvering as a factor in determining whether the statute should be tolled. Rather, as set forth above, we find that the majority considered that same question yet reached a different result. The majority found that the evidence supported a finding that the State attempted to evade the speedy-trial term, whereas the dissent argued that it did not. See *Van Schoyck*, 232 Ill. 2d at 339-40, 347.

### 2. *Application of Current Law*

■ Having found that *Van Schoyck* did not overrule previous cases that hold that a *nolle prosequi* tolls a speedy-trial term as to identical charges refiled at a later date unless the accused proves an intent by the State to evade the speedy-trial term or gain a tactical advantage over the defense, we now evaluate whether the trial court erred in denying defendant's July 9, 2008, motion to dismiss the misdemeanor DUI counts. The trial court found that defendant did not establish a "clear-cut pattern that the State [attempted] to evade the speedy-trial statute at the time the case was *nol[-]prossed*." Whether the State acted to evade the speedy-trial term or otherwise gain a tactical advantage over defendant is a factual issue. In general, a reviewing court may upset a trial court's factual determination only if it is against the manifest weight of the evidence. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009). However, specifically, a trial court's determination of how many days have accrued against the State following a defendant's speedy-trial demand is typically reviewed against an abuse-of-discretion standard. See, *e.g.*, *Kliner*, 185 Ill. 2d at 115.[2]

---

[2]*People v. Crane*, 195 Ill. 2d 42, 51 (2001), states that, when resolving a *constitutional* speedy-trial claim, any factual determinations made by the trial court, which are contained in the record, shall be upheld on review unless they are against the manifest weight of the evidence. However, *Crane* also cites *Kliner*, 185 Ill. 2d at 115, a *statutory* speedy-trial case, as here, which states that the trial court's determination as to who is responsible for a delay of the trial is entitled to much deference and should be sustained absent a

Defendant contends that the State's failure to effectuate the stated purpose of its *nolle prosequi, i.e.,* to enhance the misdemeanor DUI charges to felonies, indicates that said stated purpose was merely a pretext for the State's true intention of evading the speedy-trial statute. The trial court was aware that the State ultimately failed to prosecute defendant for a felony DUI, but stated that this did not necessarily evince an attempt to manipulate the system, noting that only 78 days had elapsed when the State sought the *nolle prosequi. Cf. People v. Hillsman,* 329 Ill. App. 3d 1110, 1116 (2002) (State's decision to nol-pros only after the trial court denied its motion to continue the case on day 112 of the 120-day term, and its admission that it intended to refile the same charges later that day, which it did, evinced an attempt to evade the speedy-trial term).

Defendant further asserts that "it is fair to infer that the [State] encountered difficulty obtaining the presence of its main witness for trial and moved to [nol-pros] the initial allegations in order to toll the running of the term." In support of this assertion, defendant notes that the unavailability of police witness Zefo caused the State to move for a continuance in December 2007. Defendant also notes that, at the February 27, 2008, hearing, the State expressed a reluctance to answer ready for trial until it obtained assurance that Zefo would be available to testify that day. Upon resuming the hearing, the State apparently abandoned its concern regarding Zefo and instead sought to nol-pros the case for the stated purpose of felony enhancement, which defendant asserts was merely pretext.

Defendant's argument that the State sought the *nolle prosequi* because it could not locate a witness, even if true, does not convince us to reverse. Defendant does not establish that nol-prossing a case due to witness unavailability is impermissible. To the contrary, several courts have held that the unavailability of a witness or evidence is a valid reason to nol-pros a case, which, in turn, tolls the speedy-trial term. See *Klein,* 393 Ill. App. 3d at 545; *Martin,* 183 Ill. App. 3d at 444; *Stinnett,* 166 Ill. App. 3d at 1028. Moreover, it is the defendant's burden to establish malintent on the part of the State, and defendant did not argue before the trial court at the hearing on the motion to dismiss that the unavailability of witness Zefo was the reason the State sought the *nolle prosequi* and that, in doing so, the State intended to evade the speedy-trial statute, gain a tactical advantage over defendant, or otherwise frustrate his due process interests.

---

clear showing that the trial court "abused its discretion," and *People v. Turner,* 128 Ill. 2d 540, 550-51 (1989), quoting *People v. Reynolds,* 92 Ill. 2d 101, 107 (1982), which states that " '[i]n resolving whether a delay is attributable to the defendant, much deference must be given to the trial court's judgment.' "

Finally, defendant's argument that the instant case is more factually similar to *Van Schoyck* than to *Klein* does not persuade us to reverse. We agree with defendant that here, as in *Van Schoyck*, the State dismissed and later refiled *identical* charges. However, this factual similarity is not dispositive. The question is whether the State sought to dismiss and later refile identical charges *for the purpose of* evading the speedy-trial term on the initial charges. In *Van Schoyck*, the State's refiling of identical charges was an improper attempt to start anew a speedy-trial term that had long since lapsed. See *Van Schoyck*, 232 Ill. 2d at 340; see also *Klein*, 393 Ill. App. 3d at 547. In the instant case, the State did not attempt to evade the speedy-trial term on the initial charges when it dismissed the initial charges prior to the expiration of the speedy-trial term and later refiled identical charges.

For these reasons, we do not find the trial court's determination that defendant failed to establish bad faith on the part of the State to be against the manifest weight of the evidence, and its ruling that the *nolle prosequi* tolled the speedy-trial term was not an abuse of discretion.

## B. Defendant's Motion for Substitution Tolled the Speedy-Trial Term

Defendant next argues that he should not be charged with the delay that resulted when, on January 14, 2009, day 159 of the term, he exercised his statutory right to substitute a judge. The State initially responds with two threshold arguments that must be addressed before we can reach the merits.

### 1. *Procedural Issues*

First, the State contends that defendant effectively withdrew his motion to substitute. The State notes that the case was tried before Judge Sutter, the originally assigned judge. We disagree that this indicates defendant "withdrew" his motion to substitute. Defendant moved to substitute Judge Diamond, not Judge Sutter. Had defendant withdrawn his motion to substitute, he would have been heard by Judge Diamond on January 14, 2009, not by Judge Sutter on March 30, 2009.

Second, the State refers to the following exchange that took place at the January 14, 2009, hearing:

> "MS. MEINDEL [for the State]: *** I know that the [motion] that the defendant just provided to your Honor states that this motion is made as of a matter of right and not in an effort to delay the proceedings, but I would also point out to the court that this order was filled out without the judge's name, so I think it was the defendant's intention—

\*\*\*

THE COURT: It doesn't matter because it still tolls the speedy trial, right?

MS. COLTON [for defendant]: Correct."

The State contends that this exchange shows that defendant invited or acquiesced to any error made in attributing to defendant any delay caused by the motion to substitute, and it argues that defendant cannot complain of an error that he induced the court to make or to which he consented. The State cites *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) (it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings).

We disagree with this argument as well. The court presented defendant with an "either/or" scenario. According to the trial court, either defendant could move to substitute Judge Diamond and cause the speedy-trial term to toll, or defendant could go to trial within the 160-day term with Judge Diamond. The essence of defendant's claim on appeal is that he should not have been placed in the position to choose between two statutory rights.

Finally, although the State does not expressly complain of defendant's failure to address the substitution issue in a posttrial motion, we consider whether defendant forfeited the issue. When a defendant fails to comply with the statutory requirement to file a posttrial motion, our review is limited to constitutional issues, sufficiency of the evidence, and plain error. *People v. Enoch*, 122 Ill. 2d 176, 190 (1988). Because each of these statutory rights is underpinned by constitutional due process rights, we will consider defendant's argument on appeal. See *People v. Exson*, 384 Ill. App. 3d 794, 799 (2008).

## 2. *On the Merits*

On the merits, defendant argues that where a defendant elects to substitute a judge at the first available opportunity and where doing so compromises the defendant's right to a speedy trial, the defendant should not be forced to choose between his two rights, and any delay caused by the election to substitute should not be charged to the defendant.

■ Section 114—5(a) of the Code states that a defendant may move for substitution of a trial judge as follows:

"Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge[,] the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion[,] the court shall

proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection ***." 725 ILCS 5/114—5(a) (West 2006).

Typically, a motion for substitution of a trial judge constitutes a delay occasioned by the defendant. *People v. Zuniga*, 53 Ill. 2d 550, 553 (1973); see also *People v. Grant*, 68 Ill. 2d 1, 6 (1977) (interpreting *Zuniga* as stating that a motion for substitution of a trial judge *per se* tolls the speedy-trial statute); *People v. Spicuzza*, 57 Ill. 2d 152, 155 (1974) (where the defendant waited until the eve of trial to move to substitute the trial judge when the motion could have been made months before, the delay was chargeable to the defendant); *People v. Walker*, 100 Ill. App. 2d 282, 289 (1968).

However, several of the cases standing for the general proposition that a motion for substitution of a trial judge constitutes a delay occasioned by the defendant fail to tease out potential nuances. For example, although the *Grant* court summarized without discussion that "[*Zuniga*] held that motions for substitution of judges *per se* toll the *** speedy[-]trial statute," in the very next sentence it cautioned that it would be improper to *per se* charge the defendant with a delay for other types of motions where the motion "ha[d] *** a negligible effect upon the process of bringing the defendant's case to trial." *Grant*, 68 Ill. 2d at 6. Arguably, the *Grant* court's summation of *Zuniga*, which did *not*, incidentally, use the term "*per se*" in its holding, belies its assumption that motions for substitution of a trial judge *invariably* have *more* than "a negligible effect upon the process of bringing the defendant's case to trial." *Grant*, 68 Ill. 2d at 6. Defendant makes a fair argument that this is not always the case.

In this vein, defendant contends that this court should follow *People v. Macklin*, 7 Ill. App. 3d 713 (1972). In *Macklin*, the court did not inform the defendant which judge would try his case until the last day of the 120-day period within which an incarcerated person must be tried. Defendant exercised his statutory right to substitute that judge. That same morning, the defendant's case was referred to the chief judge for reassignment. The chief judge was available to hear the case, and the chief judge knew of at least one, if not two, other judges who were able to hear the case that day, but the case was not heard. *Macklin*, 7 Ill. App. 3d at 714. Four days later, the defendant's attorney moved to dismiss the case, arguing that the defendant's right to a speedy trial had been violated. The trial court granted the motion. *Macklin*, 7 Ill. App. 3d at 714. The appellate court affirmed, stating:

"We find no authority for the proposition that a defendant waives the '120-day rule' by exercising his statutory right to substitute a

judge when the first opportunity to exercise that statutory right comes on the last day of the 120 because the State or the Administrators of the Judicial System have not seen fit to afford a defendant an earlier opportunity to exercise that statutory right. ***

*** The defendant had a statutory right to trial within 120 days of incarceration and a statutory right to substitute the trial judge assigned to try the case. Neither right may be precluded by the other nor may a defendant be forced to choose between the two when an exercise of both rights will not cause an unavoidable delay." *Macklin*, 7 Ill. App. 3d at 715-16.

Defendant contends that this language supports a finding that a defendant "cannot be put in [the] dilemma [of choosing between his right to a speedy trial and his right to substitute a judge], [and] that any delay in a last-minute effort to find a judge acceptable to the defense must be the responsibility of the court system." Defendant's reading of *Macklin* is inaccurate.

*Macklin* does *not* stand for the proposition that a defendant may *never* be put in the position of choosing between two statutory rights. To the contrary, the *Macklin* court held that "a defendant [may not] be forced to choose between the two [rights] *when an exercise of both rights will not cause an unavoidable delay.*" (Emphasis added.) *Macklin*, 7 Ill. App. 3d at 715-16. The *Macklin* court explained that, in the case before it, the record was *clear* that the defendant's motion did not cause an unavoidable delay but, rather, merely occasioned circumstances in which either a lack of diligence on the part of the State or the faulty operation of judicial administration occasioned the delay. *Macklin*, 7 Ill. App. 3d at 716.

Thus, the *Macklin* court left open the question of whether a defendant would be charged with a delay if, when forced to choose between his right to a speedy trial and his right to substitute, the defendant moved to substitute the judge and either: (1) the motion caused an unavoidable delay; or (2) it was *unclear* whether the motion caused an unavoidable delay. *Macklin*, 7 Ill. App. 3d at 715-16.

The court in *People v. Richmond*, 34 Ill. App. 3d 328 (1975), answered in the affirmative the question left open by *Macklin*. In *Richmond*, the defendant argued that his statutory right to substitute a trial judge would be compromised if any delay were attributed to him as a result. *Richmond*, 34 Ill. App. 3d at 331. The *Richmond* court noted that a defendant may always exercise his right to avoid a prejudicial trial by electing to substitute a judge; however, the election may " 'start anew the administrative procedure' " of bringing the defendant to trial in that the defendant's case may lose whatever

seniority status it had acquired on the original judge's calendar. *Richmond*, 34 Ill. App. 3d at 331, quoting *Spicuzza*, 57 Ill. 2d at 155. The majority in *Richmond* observed that, in the case before it, it was "impossible to determine" if the transfer of the defendant's case to another judge's calendar actually advanced or delayed bringing the case to trial and held that, nevertheless, the nature of the motion itself caused an administrative delay significant enough to toll the speedy-trial term. *Richmond*, 34 Ill. App. 3d at 333.

The court based its decision on a series of cases that held that a defendant's election to substitute a judge tolled the speedy-trial statute, even if it was impossible to determine whether the defendant's election to substitute actually caused a delay. See *Zuniga*, 53 Ill. 2d at 554; *People v. Nowak*, 45 Ill. 2d 158, 166 (1970). The *Richmond* court reasoned that the right to a speedy trial and the right to avoid a prejudicial trial are separate but related rights that must be balanced with society's interest in the fair administration of justice, and it stated that to find that the tolling of the speedy-trial period on the election to substitute a judge denied the defendant his or her right to a speedy trial would be to ignore the practical administrative problems in the criminal division that require a balancing of interests. *Richmond*, 34 Ill. App. 3d at 331 (relying on *People v. Johnson*, 45 Ill. 2d 38, 44 (1970) (regarding competing rights to a speedy trial and to avoid a precipitous trial, "[t]he fact that on occasion the accused may have to jeopardize the legislative benefits of the four-month rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial"), and *Walker*, 100 Ill. App. 2d at 286 (a defendant seeking the guarantee of rights provided under the speedy-trial statute must be held to some measure of restraint in exercising certain pretrial tactical motions)).[3]

Hence, the key question, pursuant to *Johnson*, *Walker*, and *Richmond*, is not simply whether a defendant was forced to choose between the two competing rights, but whether, upon being forced to choose

---

[3]Justice Simon dissented in *Richmond*. However, he did not disagree with the rule of law set forth by the majority so much as he did their handling of a factual matter. Whereas the majority stated that it was "impossible to determine" (*Richmond*, 34 Ill. App. 3d at 333) whether the transfer of the defendant's case to another judge's calendar delayed bringing the case to trial, Justice Simon thought the facts were clear that the defendant's motion did *not* cause an unavoidable delay. *Richmond*, 34 Ill. App. 3d at 334 (Simon, J., dissenting). Justice Simon noted that the motion for substitution was made on the day of the arraignment, before the case could have gained any sort of priority with the original judge, and was assigned to a new judge that same day. *Richmond*, 34 Ill. App. 3d at 335 (Simon, J., dissenting).

between the two competing rights, it is *clear* that the defendant's motion to substitute did not cause an unavoidable delay. See *Macklin*, 7 Ill. App. 3d at 715-16.

■ Here, the record precludes a finding that defendant's motion clearly did not cause an unavoidable delay. Defendant could have had his case heard on day 159 by Judge Diamond, but defendant moved to substitute. Unlike *Macklin*, where the record indicated that numerous judges were available to hear the case that day, the record here does not indicate that any other judge aside from Judge Diamond would have been able to hear the case that day. Judge Sutter indicated that he would not be able to hear the case that day or the next day due to his obligations in a jury trial that was in progress. Judge Sutter informed the parties that he was next available to hear the case approximately two months later and the parties agreed. Hence, there is nothing in the record to indicate that this delay was clearly avoidable.

Therefore, defendant's motion to substitute tolled the speedy-trial term.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON and BURKE, JJ., concur.